UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANCINE GANNON,<br>　　　Plaintiff,<br><br>v.<br><br>MARRIOTT INTERNATIONAL INC.<br>　　　Defendant. | CIVIL ACTION NO.<br>05-10815 RWZ |

**MARRIOTT INTERNATIONAL, INC.'S OPPOSITION
TO THE PLAINTIFF'S MOTION TO REMAND**

Marriott International, Inc. ("Marriott") opposes the plaintiff's motion to remand because the amount in controversy exceeds $75,000.00 and given the undisputed diversity of citizenship between the parties, this Court properly has subject matter jurisdiction over this case.

**I.　　Burden of Proof.**

As the party seeking to remove the action from state court, Marriott bears the burden of establishing federal court jurisdiction. Kivikovski v. Smart Professional Photocopying Corp., 2001 WL 274763 (D.N.H.) To withstand a motion to remand of a plaintiff who does not specify the dollar value sought, First Circuit Courts generally require a removing defendant to establish subject matter jurisdiction by a preponderance of the evidence. Nollet v. Palmer, 2002 WL 1674379 (D.N.H.) citing Kivikovski, 2001 WL 274763. The Raldo decision cited by the plaintiff to suggest the "legal certainty" standard is misplaced because there the defendant sought to remove a case filed in Federal Court by the plaintiff. Raldo v. Rhone-Poulenc, 241 F.Supp.2d 61, 63 (2002.)

**II.　　The Matter In Controversy Exceeds $75,000.00.**

The plaintiff claims that she tripped and fell at the defendant's place of business and as a result sustained a separated kneecap and injuries to the ligaments in her knee. Her complaint articulates her injury as "severe and debilitating" including "great pain of body and mind" and resulting in medical expenses. (Plaintiff's First Amended Complaint. Par. 9.) In the Statement of Damages attached to the Complaint, the

plaintiff itemizes medical expenses totaling $8,298.00 as a result of a "right patella dislocation" and "extreme pain" and "suffering." (Civil Action Cover Sheet.) In the letter attached to the plaintiff's motion at Tab C, the plaintiff's attorney cites the kneecap dislocation as well as cartilage tears in the knee and arthritis in her knee. He describes the injury as "one of the most painful once [sic] can have" and "a severe and crippling injury."

Personal injury damages are, in every case, liquid. The jury in this case will be asked to value not just the plaintiff's medical expenses, but also her pain and suffering and the impact on her life and activities. The $8,200.98 in itemized medical bills is only one part of the equation. Although each case must be examined on its own facts and circumstances, it is conceivable that this injury, with its associated pain and suffering and resulting disability, would result in an award higher than $75,000.00. (Exhibit "A," Attached, Settlement Report of $300,000 for a torn knee ligament in a female plaintiff.) The plaintiff's injury, as communicated in the settlement demand letter (and as will certainly be argued at trial) is one that, although not subject to a lot of expensive treatment, is nonetheless painful and debilitating.

When Marriott proposed a remand by agreement with the plaintiff stipulating that the damages do not exceed $74,999.99 and that any State Court award exceeding that amount would be remitted, she refused. She did this because she knows there is a reasonable likelihood that she might receive $75,000.00 or more and she isn't willing to forego that likelihood. Her response to Marriott's offer acknowledges that the amount in controversy exceeds $75,000.00.

The plaintiff's willingness to settle the case for $60,000.00, to the extent that it should be considered at all, further acknowledges the likelihood of recovery in excess of $75,000.00. Courts look to amounts claimed – not to what plaintiffs say they're willing to settle for. If the Court were to consider a plaintiff's settlement demand, the only reasonable interpretation of the pre-suit settlement demand of $60,000.00 is that the plaintiff believes that she might receive more from a jury. A pre-suit settlement demand necessarily takes into consideration the risks and expense of litigation and trial. If the plaintiff is willing to resolve the case for $60,000.00 in order to avoid the expense and inconvenience of litigation as well as the risks of trial, she certainly expects to receive more having endured that.

The case should remain in the Federal Court because it is a personal injury case where the plaintiff is claiming a "debilitating" injury that continues to affect her daily activities. It is certainly reasonable to conclude that the matter in controversy exceeds $75,000.00. For these reasons, Marriott respectfully requests that the Court DENY the plaintiff's motion and retain jurisdiction over this case.

Dated: May 26, 2005

MARRIOTT INTERNATIONAL, INC.
By Its Attorneys,
CAMPBELL CAMPBELL EDWARDS & CONROY
PROFESSIONAL CORPORATION

James M. Campbell, BBO # 541882
Christopher A. Callanan, BBO # 630649
One Constitution Plaza
Boston, MA 02129
617-241-3000

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the following attorney of record by mail on May 26, 2005.

Michael P. Robinson
The Law Offices of Stephen Robinson
155 South Main Street
Providence, RI 02903

Christopher A. Callanan

# Exhibit A

# VERDICTS & SETTLEMENTS

## 'Black Spots'; Loses Vision In Eye
### icted; Drops Were Prescribed Instead



ASTOR

the patient to return as needed. The plaintiff claimed that he advised the defendant doctor on both visits that he was experiencing floaters and impaired vision in his left eye. The defendant doctor's record did not reflect the same.

The plaintiff returned for a third visit five weeks later, at which time tears to the retina were noted. Three surgeries were ultimately performed, all of which failed to restore the vision of the left eye.

The plaintiff was prepared to demonstrate that as a direct result of the defendant eye care group's failure to properly transmit information from the emergency room to the defendant doctor, and the defendant doctor's failure to obtain a thorough history of the plaintiff's vision problems, the defendant doctor failed to conduct a retinal exam, which would have demonstrated a retinal tear or detachment.

If the diagnosis had been made in a timely manner, surgery would have been performed at that time, sparing the plaintiff from total loss of vision, according to the plaintiff's expert witness.

The defendants named four ophthalmologists as expert witnesses, all of whom were prepared to testify that it was the defendant doctor's clinical opinion that the plaintiff's condition had improved from the first to the second visit; that the defendant complied with good and accepted practice; and that nothing the defendants did or failed to do was the legal cause of the plaintiff's loss of vision.

The case settled at mediation for $300,000, five weeks prior to trial.

**Type of action:** Medical Malpractice
**Injuries alleged:** Loss of vision in left eye
**Name of case:** Withheld
**Court/case #:** Withheld
**Tried before judge or jury:** N/A (mediated)
**Name of mediator:** Geoffrey White
**Amount of settlement:** $300,000
**Date:** March 1, 2005
**Highest offer:** $300,000
**Most helpful expert:** Marvin Kraushar, M.D., ophthalmologist, Westfield, N.J.
**Attorney:** Robert H. Astor, Springfield and Northampton (for the plaintiff)

## sing Unattended Vehicle At Car Wash
### At Exit Of Tunnel That Was Adjacent To Roadway

The plaintiff called for help, but there was no response. Believing that his car would continue to roll down the incline and into the busy roadway below, the plaintiff ran toward his vehicle and attempted to open the driver's side door, seat himself, and bring his vehicle to a safe stop before it rolled closer to the roadway.

In the process of opening the driver's door and gaining control of his vehicle, the plaintiff sustained a sudden rupture of his quadriceps tendon, leaving him in pain and without the ability to use his leg. The injury required open surgical repair, followed by a long rehabilitation period of approximately one year.

The plaintiff's liability case was based on the defendant's alleged failure to have one or more attendants positioned at the exit of the tunnel, as was typically the case, to safely retrieve and control exiting vehicles when they reached the end of the car wash chain drive.

The plaintiff had also considered a potential products liability claim against the designers and installers of the car wash system based on the apparent capacity of the system to disengage an exiting vehicle from the system's chain drive despite the absence of an attendant.

Continued on page B6

## Waitress Slips On Wet Carpet, Suffers Tear To Her Knee

### $300,000 Settlement

In August 2000, the 25-year-old female plaintiff worked as a waitress in a popular seafood restaurant that was shaped like a large ship. The plaintiff alleged that she slipped on carpeting in the restaurant that had become wet due to a long-standing roof leak near the "bow" of the restaurant.

The plaintiff was diagnosed with an ACL tear to her left knee. She underwent an ACL repair in December 2001, and an arthroscopic repair in July 2003. She was later diagnosed with thrombosis, for which she was treated with blood thinners.

Two-and-a-half years after the accident, the plaintiff contacted the present attorney with regard to a potential third-party claim. By that time the roof had been replaced during a general renovation of the entire structure. Suit was brought against the two trusts that controlled the building. During litigation, the general liability insurance carrier for the restaurant initiated insolvency proceedings.

The defendants contended they had no notice of a leak in the roof, and that if there was a leak in the roof, it was due to the plaintiff's employers' failure to maintain the HVAC equipment located on the roof of the building, as required under the lease.

The defendants also raised the issue of whether the wet carpeting was the result of the nearby kitchen operations within the restaurant.

The case settled after mediation.

**Type of action:** Slip, Trip & Fall
**Injuries alleged:** ACL tear to left knee with thrombosis
**Name of case:** Withheld
**Court/case #:** Withheld
**Tried before judge or jury:** N/A (mediated)
**Name of mediator:** James Dolan
**Special damages:** Approximately $45,500 (medicals); $60,000 (past lost wages)
**Amount of settlement:** $300,000
**Date:** February 2005
**Attorney:** Philip J. Puglisi, Bigelow & Puglisi, Boston (for the plaintiff)

---



u Know A

INJURY

In the Area of Medical Malpractice...

*Results Matter*